UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>v.<br><br>NOAH S. CUEBAS,<br><br>                   Defendants. | Criminal Action No. 06-cr-613 (JXN)<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court by way of Defendant Noah S. Cuebas' ("Defendant" or "Cuebas") *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 142.) The United States of America (the "Government") filed an Opposition. (ECF No. 144.) Defendant did not file a reply to the Government's Opposition. The Court has considered the parties' submissions and decides the motion without oral argument under Local Civil Rule 78.1(b), which applies to criminal cases pursuant to Local Criminal Rule 1.1. For the reasons stated herein, Defendant's motion is **DENIED**.

I.    **BACKGROUND**

      A.  **Factual Background**

In the early morning hours of July 8, 2006, at approximately 5:00 a.m., W.S. and his girlfriend, Y.S., were parked behind an apartment building in East Orange, New Jersey, when Defendant Cuebas approached their vehicle while armed. *United States v. Cuebas*, 415 F. App'x 390, 391-92 (3d Cir. 2011). Cuebas ordered the couple to open the door, struck W.S. repeatedly with the firearm, and forcibly took cash, a watch, a cell phone, and multiple packets of cocaine. He then forced W.S. into the trunk of the vehicle and proceeded to rob Y.S. *Id*. at 392.

Cuebas subsequently made W.S. move to the driver's seat and drive a short distance before ordering him out of the car. *Id*. Once W.S. had exited the vehicle, Cuebas demanded sex from Y.S. She initially refused, and Cuebas threatened to kill her. *Id*. Cuebas then offered to take Y.S. home if she complied with his demand. *Id*. Y.S. relented, and they drove into a side street where Cuebas raped her at gunpoint. *Id*. Thereafter, Cuebas forced Y.S. to drive to the parking lot of a church, where he told Y.S. he intended to kill her. *Id*. Y.S. pleaded for her life, telling Cuebas that she had a sick child at home who needed care. *Id*. Cuebas shot Y.S. once in the head. *Id*. Believing he had killed her, Cuebas wiped the vehicle to remove any evidence before fleeing the scene. *Id*.

Approximately ninety minutes later, police discovered Y.S. critically injured. *Id*. She was transported to a hospital, where she underwent multiple neurosurgeries and remained in a coma for more than two months. *Id*. Cuebas was arrested about ten days later on a parole violation. *Id*. Although he initially denied involvement, he ultimately confessed to the carjacking, rape, and shooting of Y.S., as well as to several other violent crimes, including multiple murders and attempted murders.[1] *Id*. During his statements to law enforcement, Cuebas described experiencing what he termed "the calmness" that would come over him as he committed these offenses. *Id*.

B. **Procedural History**

On October 23, 2009, a jury convicted Cuebas of one count of armed carjacking and one count of discharging a firearm during a crime of violence. (ECF No. 107.) The Probation Office prepared a presentence investigation report ("PSR"), which calculated a United States Sentencing Guidelines ("U.S.S.G.") range of 324–405 months for the carjacking offense, capped by the statutory maximum of 300 months. *Cuebas*, 415 F. App'x at 393. The PSR also included a

---

[1] In April 2010, Cuebas pleaded guilty to two of these murders in a separate proceeding in Essex County, New Jersey. *Cuebas*, 415 F. App'x at 392, n.3.

mandatory consecutive term of 120 months for the 18 U.S.C. § 924(c) count, resulting in a total Guidelines range of 420 months. *Id*.

At sentencing, Cuebas sought a downward departure based on his mental and emotional condition, which the District Court denied. *Id*. Instead, the Court departed upward under U.S.S.G. § 5K2.2 due to the extraordinary injuries suffered by Y.S., and under U.S.S.G. § 2B3.1 cmt. n.5 based on Cuebas' intent to commit murder. (*See* Sentencing Transcript ("Tr.") 27:22-28:3; 29:16-30:8, ECF No. 133.) The Court (Greenaway, Jr., J.) imposed a sentence of 300 months for the carjacking count plus a consecutive life sentence for the § 924(c) conviction. (Tr. 38:19-39:2.)

On appeal, the Third Circuit affirmed both the conviction and sentence, finding "the upward departure was in no way an abuse of discretion and the District Court quite reasonably concluded that Cuebas must spend the rest of his days in prison." *Cuebas*, 415 F. App'x at 399.

On April 10, 2012, Cuebas filed a petition for a writ of habeas corpus under 28 U.S.C. § 2255, which the Court (Salas, E.) denied on January 21, 2015. *See Cuebas v. United States*, No. Civ. 12-02112 (ES), 2015 WL 268823, at *1 (D.N.J. Jan. 21, 2015).

On January 13, 2023, Cuebas submitted a Reduction in Sentence Application ("RIS Application") to the Warden of the Federal Correctional Complex in Coleman, Florida, asserting medical conditions including asthma and arguing that *United States v. Davis*, 139 S. Ct. 2319 (2019), rendered his convictions no longer "crimes of violence." (ECF No. 142-1 at *3.)[2] The Warden denied the request on January 20, 2023. (*Id*. at *2.)

### C. Motion for Compassionate Release

On April 20, 2023, Cuebas filed the instant *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), citing "serious physical or medical condition" and "other"

---

[2] Pin-cites preceded by an asterisk (*) refer to the pagination atop the CM/ECF header.

3

extraordinary and compelling reasons. (ECF No. 142 at 4–5.) The Government opposed, arguing that Cuebas failed to exhaust administrative remedies, did not demonstrate an extraordinary and compelling basis for relief, and that the factors under 18 U.S.C. § 3553(a) weigh against release. (ECF No. 144.) Cuebas did not file a reply. The matter is now ripe for review.

## II.     LEGAL STANDARD

A district court generally has limited authority to modify a federally imposed sentence once it commences. *Dillon v. United States*, 560 U.S. 817, 824 (2010) (noting that a sentence of imprisonment "may not be modified by a district court except in limited circumstances"). However, the First Step Act permits courts to grant compassionate release when there are "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act, passed in December 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194 (2018) enables defendants to file motions for compassionate release on their own behalf. Before the First Step Act, the Bureau of Prisons (BOP) was the "sole arbiter of compassionate release motions." *See United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). Although BOP still has "the first opportunity to decide a compassionate release motion and may still bring a motion on a defendant's behalf," a defendant now "has recourse [by filing a motion in federal court] if BOP either declines to support or fails to act on that defendant's motion." *Id*.; 18 U.S.C. § 3582(c)(1)(A).

Once the First Step Act's procedural prerequisites are satisfied, a district court may reduce a defendant's sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Burd*, Crim. No. 21-86, 2023 WL 3271167, at *1 (D.N.J. May 5, 2023)

(quoting *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020), *aff'd*, 837 F. App'x 932 (3d Cir. 2021)).

**III.   DISCUSSION**

A defendant seeking a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) "bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

**A.   Exhaustion**

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet Section 3582(c)(1)(A)'s exhaustion requirement. To satisfy this exhaustion requirement, defendants must, before moving for compassionate release, first ask the BOP to do so on their behalf and must give the BOP thirty days to respond. *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).

Here, there is no dispute that Cuebas satisfied § 3582(c)(1)(A)'s exhaustion requirement, as both Cuebas and the Government acknowledge that the BOP denied Cuebas' request for compassionate release prior to Cuebas filing the instant motion. (*See* ECF Nos. 142 at 3; 142-1; 144 at 6; 144-1, Ex. A.) Therefore, the Court finds Cuebas has satisfied § 3582(c)(1)(A)'s exhaustion requirement and proceeds to consider the merits of his motion.

**B.   Extraordinary and Compelling Reasons**

Recent changes to the Sentencing Guidelines Policy Statements now provide prisoners with additional avenues for seeking relief under 18 U.S.C. § 3852(c)(1)(A). *United States v. Shore*, No.

CR 07-66, 2023 WL 7285144 (E.D. Pa. Nov. 2, 2023); *see also* U.S. Sentencing Commission, Adopted Amendments (Effective November 1, 2023), available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023. ("[T]he amendment extends the applicability of the policy statement to defendant-filed motions; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing 'other reasons' catchall; provides specific guidance with regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act.").

In his motion, Cuebas contends that there are extraordinary and compelling reasons for a reduction of sentence because (i) he has a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility; and (ii) there are other extraordinary and compelling reasons for his release. (*See generally*, ECF No. 142.) The Court considers these claims in turn.

### i. Medical Circumstances

While Cuebas checked a box on the form indicating that he has a "serious physical or medical condition" and wrote that he has been "denied access to medical care that is adequate" in his motion, he did not identify the medical condition for which he is allegedly being denied or being provided inadequate medical care for in his papers. (*See* ECF 142 at 4-5.) However, because Cuebas alleged that his "asthma" amounted to an extraordinary and compelling circumstance warranting compassionate release in his RIS Application, the Court will address it. (*See* ECF No. 142-1, Ex. A. at 1.)

In his RIS Application, Cuebas alleged that his asthma "diminishes [his] ability to provide self-care within the environment of a correctional facility." (*Id.*) According to the BOP medical

6

records submitted by the Government, Cuebas' asthma is managed with albuterol "as needed," with instructions specifically stating, "Don't use daily." (Gov't Ex. B (2023 BOP Medical Records) at 6, 8, 25; Ex. C (2024 BOP Medical Records) at 5-6, 32.) Further, there is no indication in Cuebas' 2023 or 2024 BOP medical records that he ever sought or received treatment while incarcerated for any acute asthmatic episode. (*See generally*, Exs. B and C.) Moreover, Cuebas BOP medical records undermine his unsupported claim that he has been "denied access to medical care that is adequate." (ECF No. 142 at 4.) Thus, while Cuebas' asthma does not appear to be affecting his quality of life, it does exist and is therefore considered in conjunction with the other circumstances presented. Upon doing so, the Court finds Cuebas has not shown he has any medical condition that the BOP cannot effectively manage. *See United States v. Williams*, No. CR 11-00421-SDW-1, 2022 WL 950994 (D.N.J. Mar. 29, 2022) (denying a defendant's request for compassionate release on the basis of medical condition because the defendant was being routinely seen by medical staff and "the [] medication that the facility provide[d] effectively manage[d] any symptoms."). As such, Cuebas' medical condition does not support his cause for release.

### C. "Other Reasons"

Cuebas challenges his sentence, arguing that carjacking is no longer a crime of violence after the Supreme Court's decision in *Davis*, 139 S. Ct. 2319, and recent changes to 18 U.S.C. § 924(c) establish "extraordinary and compelling" reasons to grant his motion. (*See* ECF No. 142 at 4-5.)

Generally, a person must bring a challenge to the validity of a federal conviction or sentence under 28 U.S.C. § 2255. *See Jackman v. Shartle*, 535 F. App'x 87, 88–89 (3d Cir. 2013) (citing *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002)).

> [T]o the extent that Defendant mounts post-judgment collateral attacks on his sentence and seeks to vacate, set aside, or correct his sentence, the proper venue is

7

> a habeas petition under 28 U.S.C. § 2255. *See United States v. Henderson*, 858 F. App'x 466, 469 (3d Cir. 2021) (stating that a claim to vacate a defendant's sentence can be raised only in a § 2255 motion). This is because a compassionate release under § 3582(c)(1)(A) "provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity." *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019). Section 3582(c)(1)(A) certainly does not provide an end-run for defendants who are subject to the restrictions of § 2255 motions to attack their sentences collaterally. *See id*.

*United States v. Craft*, No. CR 18-0085, 2021 WL 5448788, at *5 (D.N.J. Nov. 22, 2021). Thus, this Court lacks jurisdiction to consider Cuebas' *Davis* claim as filed. Instead, the proper procedural vehicle for a *Davis* claim is a motion under § 2255. *See United States v. Reece*, 938 F.3d 63, 635 (5th Cir. 2019), as revised (Sept. 30, 2019) *Handerhan*, 789 F. App'x at 926 (§ 3582(c)(1)(A) "provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity"). In order to bring a second or successive § 2255 challenge to the validity of his sentence, Cuebas would have to satisfy the stringent conditions of 28 U.S.C. § 2255(h). Those preconditions include, for example, obtaining a certification from the Court of Appeals that his motion contains newly discovered evidence, or a new rule of constitutional law made retroactive by the Supreme Court. He has not done so.

Further, the Third Circuit recently considered whether a nonretroactive change in the law could be considered an "extraordinary and compelling reason" to warrant a sentence reduction. *United States v. Rutherford*, 120 F.4th 360, 372 (3d Cir. 2024). Specifically, the Third Circuit considered whether courts must be guided by the Sentencing Commission's 2023 amended policy statement (U.S.S.G. § 1B1.13(b)(6)) on compassionate release, which "said, for the first time, that courts could consider nonretroactive changes in law" such as the First Step Act's nonretroactive change to the "stacking" provision of § 924(c). *Rutherford*, 120 F.4th at 363. The court held that "subsection (b)(6) in the amended Policy Statement, as applied to the First Step Act's modification of § 924(c), conflicts with the will of Congress and thus cannot be considered in determining a

8

prisoner's eligibility for compassionate release." *Id*. at 376. This is so because "Congress explicitly made the First Step Act's change to § 924(c) nonretroactive." *Id*. The court also reaffirmed its holding in *United States v. Andrews*, noting that the duration of a defendant's sentence and nonretroactive changes in the law are not "'always irrelevant to the sentence-reduction inquiry' because they 'may be a legitimate consideration for courts at the next step of the analysis when [a court] weigh[s] the § 3553(a) factors.'" *Id*. at 377 (quoting *United States v. Andrews*, 12 F.4th 255, 262 (3d Cir. 2021)). Nevertheless, "[w]hen it comes to the modification of § 924(c), Congress has already taken retroactivity off the table, so [courts] cannot rightly consider it." *Rutherford*, 120 F.4th at 378.

The mandates of *Rutherford* are clear, the First Step Act's modification of § 924(c) is not an "extraordinary and compelling" reason to reduce Cuebas' sentence. *See United States v. Manning,* Crim. No. 14-00326, 2025 WL 24717, at *1 n.2 (D.N.J. Jan. 2, 2025) (noting that because of the Third Circuit's decision in *Rutherford*, the parties agreed that the defendant was "ineligible for relief under [U.S.S.G. § 1B1.13](b)(6)"); *see also Andrews*, 12 F. 4th at 261 (noting that "the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence" (quoting *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring))). Accordingly, the Court finds that there has been no change in the law to justify a reduction in sentence, even if that were a basis to justify a claim under § 3582(c)(1)(A).

### D. Section 3553(a) Factors

Even if the Court were to find that Cuebas' reasons for compassionate release were "extraordinary and compelling," Cuebas' motion would not succeed because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against his early release.

9

Under 18 U.S.C. § 3553(a), a court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing, including the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," afford adequate deterrence, protect the public from additional crimes by the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D). The court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," among other factors. *Id.* § 3553(a)(1), (6).

First, the nature and circumstances of the offense warrant against compassionate release. Cuebas was convicted of committing one count of armed carjacking and one count of discharging a firearm during the commission of a crime of violence. Cuebas' armed carjacking consisted of the rape and attempted murder of Y.S., where he shot her in the head and left her to die. These injuries left Y.S. permanently disabled and unable to care for herself. *See Cuebas*, 415 F. App'x at 399. Then, when questioned by police, Cuebas "confessed to several other crimes, including at least two murders, one attempted murder, a number of robberies, and a separate carjacking." *Id*. at 392. He received a life sentence plus 300 months for committing what the sentencing judge described as "bone chilling" crimes that were "among the most depraved that [the District Court had] seen outside of fiction reading and cinema." (Tr. 42:20-23.) In affirming Cuebas' sentence, the Third Circuit concluded as follows:

> The record is replete with evidence detailing the severity of the injuries suffered by Y.S., which have left her permanently disabled and unable to care for herself. Indeed, the District Court aptly noted that Y.S. survived only "through some miracle of divine intervention." App. 1176. The upward departure was in no way

10

>an abuse of discretion and the District Court quite reasonably concluded that Cuebas must spend the rest of his days in prison. *See* App. 1176 ("He is a miscreant, he cannot be among us.").

*Cuebas*, 415 F. App'x at 399. Second, general deterrence weighs against prematurely releasing Cuebas. 18 U.S.C. § 3553(a)(2)(A). His offenses reflected a desire to unjustly and illegally acquire a car through armed force, as well as take the life of an innocent person with the use of a firearm. This conduct needs to be deterred. Third, Cuebas has not served a substantial enough portion of his sentence. *Id.* "Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors." *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020). Cuebas was sentenced to a life sentence plus 300 months in prison. Releasing Cuebas less than 20 years into his sentence would not accurately reflect the seriousness, nature, or circumstances of his offenses. *See* 18 U.S.C. § 3553(a)(1), (2)(A). Further, releasing Cuebas at this juncture would also result in a substantial variance and reduction of his life sentence; this would certainly be an inequitable result when viewed in the context of the other sentencing factors and the record as a whole. (ECF No. 144 at 21.) In *United States v. Norwood*, 841 F. App'x. 495, 498 (3d Cir 2021), the Court affirmed the District Court's denial of compassionate release under 18 U.S.C. § 3582(c)(1)(A), as it "emphasized the seriousness of [Defendant]'s offense, particularly the violent nature of both the armed robbery and the subsequent carjacking." The Court concluded that "these serious, violent offenses warranted a severe sentence both to provide for a just punishment and to serve as an adequate deterrent to would-be bank robbers and carjackers." *Id*. Further, requests have been denied despite the longer time served. *United States v. Desciscio*, 2020 WL 3893711 (D.N.J.

July 9, 2020) (denying compassionate release despite 32 years served of a 75-year sentence, based on defendant's failure to demonstrate extraordinary and compelling reasons justifying release and the violent and egregious nature of defendant's crime). *See also United States v. Gore*, 2020 WL 3962269 (D.N.J. July 13, 2020) (denying compassionate release despite over 70% of sentence served, based on defendant's failure to demonstrate extraordinary and compelling reasons justifying release and additional § 3553(a) factors informing against release). Lastly, the need to protect the public from further crimes by the defendant, given his past disregard for public health and safety, indicates that he remains a danger to the community. *See* § 3553(a)(2)(C). Indeed, to warrant compassionate release, the policy statement requires a court to find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Considering Cuebas' repeated, armed, and violent conduct, the Court cannot find that Cuebas will not be a danger to the community if he is released. Accordingly, the Court finds that the § 3553(a) factors weigh strongly against Cuebas' early release.

## IV.  CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion for Compassionate Release (ECF No. 142) is **DENIED**. An appropriate Form of Order accompanies this Opinion.

**DATED**: July 9, 2025

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge